1
2
3
4
5
6
7
8

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

10

| | |
|---|---|
| 11 THERESA BROOKE, | Case No. 1:21-cv-00967-AWI-SAB |
| 12 Plaintiff, | FINDINGS AND RECOMMENDATIONS RECOMMENDING GRANTING |
| 13 v. | DEFENDANT'S MOTION TO SET ASIDE ENTRY OF DEFAULT, DENYING |
| 14 SAI ASHISH INC., | PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT AS MOOT, AND GRANTING |
| 15 Defendant. | DEFENDANT'S MOTION TO DISMISS |
| 16 | (ECF Nos. 7, 16) |
| 17 | OBJECTIONS DUE WITHIN FOURTEEN DAYS |

18

Plaintiff Theresa Brooke, who is represented by counsel, brings this civil action pursuant to the Americans with Disabilities Act ("ADA") and California's Unruh Civil Rights Act ("Unruh Act").

Currently before the Court is Plaintiff's motion for default judgment (ECF No. 7) and Defendant's motion to set aside default/motion to dismiss (ECF No. 16). A hearing on the motions was held on October 6, 2021. Counsel Peter Kristofer Strojnik appeared by videoconference for Plaintiff. Counsel Mona Patel appeared by videoconference for Defendant Sai Ashish, Inc. Having considered the moving, opposition and reply papers, the declarations and exhibits attached thereto, the arguments presented at the October 6, 2021 hearing, as well as the Court's file, the Court issues the following findings and recommendations recommending granting Defendant's motion to set

1  aside default, denying Plaintiff's motion for default judgment, and granting Defendant's motion to

2  dismiss.

3  **I.**

4  **RELEVANT BACKGROUND**

5      **A.**    **Plaintiff's Allegations**

6        This action is proceeding against Defendant for claims under the ADA (42 U.S.C.§

7  12102(2)) and the Unruh Act (Cal. Civ. Code  § 52).

8        Plaintiff "ambulates with the aid of a wheelchair due to the loss of a leg." (Compl. ¶ 1, ECF

9  No. 1.)  Plaintiff alleges she and her husband are "avid travelers to California for purposes of leisure

10  travel and to 'test' whether various hotels comply with disability access laws."  (Id. at ¶ 7.)

11  Defendant "owns and/or operates and does business as" the hotel Ramada by Wyndham Fresno

12  Northwest in Fresno, California.  (Id. at ¶ 2.)

13        Plaintiff and her husband traveled to the Central Valley in early May 2021 "for purposes of

14  leisure and to test accessibility at local hotels from Turlock to Elk Grove." (Id. at ¶ 8.)  During this

15  trip, Plaintiff visited Defendant's hotel and discovered that the passenger loading zone directly

16  outside the lobby did not have an "access aisle." (Id. at ¶¶ 9–10.)  Plaintiff claims a disability

17  access aisle is required under 42 U.S.C. § 12182(a), (b)(2)(A)(iv), and Section 503 of the "2010

18  Standards."[1]  (Id. at ¶¶ 19–22.)  Deterred, Plaintiff did not enter the hotel and will not attempt to

19  gain access until Defendant creates an access aisle.  (Id. at ¶¶ 11–12.)  At the time Plaintiff initiated

20  this action, she alleged she would re-visit Defendant's hotel in August 2021 to determine whether

21  Defendant had created an access aisle.  (Id. at ¶ 12.)

22      **B.**    **Procedural Posture**

23        Plaintiff initiated this action on June 17, 2021.  (ECF No. 1.)  On July 19, 2021, Plaintiff

24  filed the executed summons.  (ECF No. 4.)  The executed summons indicates the summons and

25  complaint was served by substituted service on Anil Dave, an "office associate" of Mihir Dave, the

26  registered agent for service of process, on June 27, 2021.  On July 27, 2021, at Plaintiff's request,

27  ───────────

[1] Plaintiff appears to be referring to the ADA Accessibility Guidelines for Buildings and Facilities ("ADAAG"),

28  which were subsequently adopted by the Attorney General as the "Standards for Accessible Design."  42 U.S.C. §
12186(c); 36 C.F.R. Pt. 1191, App. A.

1  default was entered against Defendant Sai Ashish, Inc.  (ECF Nos. 5, 6.)

2  On August 5, 2021, Plaintiff filed the instant motion for default judgment.  (ECF No. 7.)

3  Thereafter, the Court reset the hearing for the motion for default judgment, and Plaintiff was

4  ordered to serve Defendant with notice of the new hearing date.  (ECF Nos. 9, 10.)  When Plaintiff

5  failed to file her proof of service, the Court ordered Plaintiff to show cause why sanctions should

6  not be imposed for her failure to show service on Defendant.  (ECF No. 10.)  Plaintiff responded,

7  twice, to the Court's order and filed a proof of service on August 20, 2021.  (ECF Nos. 11, 13.)

8  Satisfied that Plaintiff established service upon filing the proof of service, the Court discharged the

9  order to show cause on August 23, 2021.  (ECF No. 15.)

10  On August 26, 2021, defense counsel appeared in this matter and filed the instant motion to

11  set aside the entry of default and/or dismiss the complaint, in which Defendant also opposes

12  Plaintiff's motion for default judgment.  (ECF Nos. 16, 17.)  On September 2, 2021, the Court

13  ordered the parties to meet and confer on the matter of Defendant's motion to set aside the entry of

14  default.  (ECF No. 19.)  Subsequent declarations of counsel indicate the meet and confer was largely

15  contentious and unproductive.  Thereafter, Plaintiff filed an opposition to the motion to set aside

16  the entry of default and Defendant filed a reply.  (ECF Nos. 22, 23.)

17  On October 6, 2021, the parties appeared for hearing on the matter.  (ECF No. 26.)  That

18  same day, Plaintiff filed a motion to file sur-response to motion to set aside and to dismiss, which

19  the Court denied.  (ECF Nos. 24, 25.)

20  **II.**

21  **DEFENDANT'S MOTION TO SET ASIDE DEFAULT**

22  **A.    Legal Standard**

23  Once default has been entered against a defendant, the Court may, "[f]or good cause shown

24  . . . set aside an entry of default . . . ."  Fed. R. Civ. P. 55(c).  "The court's discretion is especially

25  broad where, as here, it is entry of default that is being set aside, rather than default judgment."

26  O'Connor v. State of Nevada, 27 F.3d 357, 364 (9th Cir. 1994) (quoting Mendoza v. Wight

27  Vineyard Mgmt., 783 F.2d 941, 945 (9th Cir. 1986)); see also Brady v. United States, 211 F.3d

28  499, 504 (9th Cir. 2000).

Default is generally disfavored. In re Hammer, 940 F.2d 524, 525 (9th Cir. 1991). Rather, "[w]here timely relief is sought from a default . . . and the movant has a meritorious defense, doubt, if any, should be resolved in favor of the motion to set aside the [default] so that cases may be decided on their merits." Mendoza, 783 F.2d at 945–46 (quoting Schwab v. Bullock's, Inc., 508 F.2d 353, 355 (9th Cir. 1974) (internal quotations and citation omitted)). In determining whether to set aside default, relevant factors including the culpability of the defendant, the existence of a meritorious defense, and any prejudice to the plaintiff should be considered. Am. Ass'n of Naturopathic Physicians v. Hayhurst, 227 F.3d 1104, 1108 (9th Cir. 2000).

A party may have an entry of default set aside upon a showing of good cause. Fed. R. Civ. Pro. 55(c). After default judgment has been entered, however, relief is governed by Rule 60(b). Brandt v. Am. Bankers Ins. Co. of Florida, 653 F.3d 1108, 1111 (9th Cir. 2011). In determining if good cause exists to set aside the default, "the court must consider three factors: (1) whether the party seeking to set aside the default engaged in culpable conduct that led to the default; (2) whether it had no meritorious defense; or (3) whether reopening the default judgment would prejudice the other party." U.S. v. Signed Personal Check No. 730 of Yubran S. Mesle (Mesle), 615 F.3d 1085, 1091 (9th Cir. 2010) (internal punctuation and citations omitted). A finding that any of these factors is true is sufficient reason for a court to refuse to set aside the entry of default. Mesle, 615 F.3d at 1091.

The test is the same for setting aside entry of default and default judgment under Rules 55 or 60; however, when a party is seeking relief from default prior to the entry of default judgment, the test is more liberally applied. Id. at 1091 n.1. "[J]udgment by default is a drastic step appropriate only in extreme circumstances; a case should, whenever possible, be decided on the merits." Id. at 1091 (quoting Falk v. Allen, 739 F. 2d 461, 463 (9th Cir. 1984)).

**B.    Discussion**

1.    Culpable Conduct

Culpable conduct occurs when a defendant receives actual or constructive notice that the action was filed and intentionally fails to answer. Mesle, 615 F.3d at 1092. Conduct is found to be culpable "where there is no explanation of the default inconsistent with a devious, deliberate,

1    willful, or bad faith failure to respond."  Id. (quoting TCI Group Life Ins. Plan v. Knoebber, 244

2    F.3d 691, 696–97 (9th Cir. 2001)).  "[S]imple carelessness is not sufficient to treat a negligent

3    failure to reply as inexcusable, at least without a demonstration that other equitable factors, such as

4    prejudice, weigh heavily in favor of denial of the motion to set aside a default."  Id.

5          Here, there is no indication that Defendant acted willfully or in bad faith in failing to

6    respond.  Instead, Defendant indicates the initial failure to respond resulted from Plaintiff's

7    substituted service on Anil Dave, rather than Mihir Dave, the designated Agent for Service of

8    Process on the California Secretary of State's business entity website page.[2]  Mihir Dave's

9    representations, made under penalty of perjury, indicate Anil Dave is neither an "office assistant"

10   (as depicted on the executed summons (ECF No. 4)) nor a managing/general agent of the

11   corporation, nor is he authorized by Defendant to receive service of process.  Rather, Anil Dave is

12   "elderly" and "seems to have misplaced the [summons and complaint] documents."  (Def.'s Mot.

13   Set Aside Default or Dismiss ("Def.'s Mot.") 3–4, ECF No. 16-1; Decl. Mihir Dave Supp. Def.'s

14   Mot. ("Dave Decl.") ¶ 2, ECF No. 16-3.)  Because the documents were misplaced and never

15   received by Mihir Dave, Defendant was unaware of the lawsuit until August 22, 2021, when he

16   received a solicitation letter from a San Diego law firm seeking to represent Defendant.  Mihir

17   Dave additionally avers that, because he had an existing attorney-client relationship since 2019, he

18   mistakenly believed Plaintiff would serve the complaint directly on his attorney.

19         Plaintiff does not challenge or otherwise address Defendant's argument that the alleged

20   substituted service on Anil Dave was improper because he was neither a representative of

21   Defendant nor authorized to accept service of process on Defendant's behalf.  (See generally Opp'n

22   to Def.'s Mot. ("Opp'n"), ECF No. 22.)  Nor does Plaintiff in any way challenge Mihir Dave's

23   statement that he was not aware of the lawsuit until August 22, 2021.[3]  Plaintiff thus concedes these

---

24   [2] The Court takes judicial notice of the fact that the designated agent for service of process listed on the California
25   Secretary of State webpage for the business entity profile for Sai Ashish, Inc. is Mihir Dave.  See
     https://businesssearch.sos.ca.gov/CBS/Detail (last accessed October 6, 2021); see also Paralyzed Veterans of America
26   v. McPherson, No. C 06-4607 SBA, 2008 WL 4183981, at *5 (N.D. Cal. Sept. 9, 2008) (factual information on
     government agency websites is proper subject for judicial notice) (collecting cases).

27   [3] Instead, the opposition focuses on Mihir Dave's statement that he is unfamiliar with the law, on the basis that Plaintiff
     previously sued Mr. Dave for ADA violations relating to another hotel he owned, and that Defendant defaulted in that
28   case as well before ultimately retaining counsel and settling with Plaintiff.  (Opp'n 6.)  Plaintiff also vehemently

arguments by failing to address them in her opposition.  See Gordon v. Davenport, No. C 08-3341 SI, 2009 WL 322891, at *4 n.4 (N.D. Cal. Feb. 9, 2009) ("Indeed, plaintiff does not even address his third cause of action in his opposition brief, suggesting that he concedes defendants' assertion that he fails to state facts giving rise to a claim for relief."), aff'd sub nom. Gordon v. State Bar of Cal., 369 F. App'x. 833 (9th Cir. 2010); Tatum v. Schwartz, No. Civ. S-06-01440 DFL EFB, 2007 WL 419463, at *3 (E.D. Cal. Feb. 5, 2007) ("[Plaintiff] tacitly concedes this claim by failing to address defendants' argument in her opposition."); see also Ramirez v. Ghilotti Bros. Inc., 941 F. Supp. 2d 1197, 1210 (N.D. Cal. 2013) (deeming argument conceded where plaintiff failed to address it in opposition); Adams v. Starbucks Corp., No. SACV 20-00225 JVS(KESx), 2020 WL 4196248, at *6 (C.D. Cal. Jul. 9, 2020) (same); Certified Nutraceuticals, Inc. v. Oleofarm Sp. z o.o., No. 3:17-cv-1088-BEN-WVG, 2018 WL 1245261, at *2 (S.D. Cal. Mar. 9, 2018) (same).  In light of these significant concessions, the Court finds Defendant has sufficiently established a reasonable explanation for the default.  Furthermore, Defendant in good faith moved to have the default set aside within days of discovering the existence of the lawsuit.

For all of these reasons, the Court finds the failure to file an answer to the complaint in this action was not "culpable conduct."

    2.    <u>Meritorious Defense</u>

In order to have an entry of default set aside, Defendant must also present specific facts that would constitute a meritorious defense.  TCI Group Life Ins. Plan, 244 F.3d at 700.  However, the burden on Defendant is not extraordinarily heavy.  Id.  Indeed, a defense is considered meritorious if "there is some possibility that the outcome of the suit after a full trial will be contrary to the result achieved by the default."  Haw v. Carpenters' Tr. Funds v. Stone, 794 F.2d 508, 513 (9th Cir. 1986).

Defendant denies that there were any barriers to Plaintiff's use of or access to the hotel and

---

contests the veracity of defense counsel's statement that she attempted to contact counsel for Plaintiff to discuss setting aside the default on August 23, 2021, after learning about the lawsuit from her client.  (See Opp'n 4–5.)  The Court declines to address these arguments because they are tangential and irrelevant to the determination of whether Defendant has presented a reasonable explanation for failing to timely respond to the complaint after service was executed.  Furthermore, the Court refuses to exercise "playground jurisdiction" over the parties and their counsel. Counsel is advised that such antics only hurt the reputations of counsel in the eyes of the public and the Court and can result in reducing the credibility of attorneys who perform thusly when appearing before this Court.  To that point, Plaintiff's request that the Court order Mr. Dave and defense counsel to "show cause as to why they both should not be sanctioned for making false statements under oath" shall be denied.  (Opp'n 7.)

1   argues Plaintiff did not even attempt to patronize the premises or contact the hotel staff to seek

2   assistance in access.   Further, Defendant argues Plaintiff lacks standing because she has not

3   plausibly alleged an intent to return to Defendant's hotel, an essential element of Plaintiff's ADA

4   claim.  The Court notes the opposition is silent with respect to Defendant's substantive arguments

5   and Plaintiff fails to address the standing argument entirely.   (See generally Opp'n.)   Again, the

6   Court notes that Plaintiff's failure to address such arguments amounts to a concession on these

7   points.  Gordon, 2009 WL 322891, at *4 n.4; Ramirez, 941 F. Supp. 2d at 1210; Tatum, 2007 WL

8   419463, at *3; Adams, 2020 WL 4196248, at *6; Certified Nutraceuticals, Inc., 2018 WL 1245261,

9   at *2.

10      Accordingly, based on the facts and argument presented by Defendant, the Court finds

11   Defendant is able to mount a meritorious defense against Plaintiff's ADA and related state law

12   claims.

13          3.      Prejudice to Plaintiff

14      "To be prejudicial, the setting aside of an entry of default must result in greater harm than

15   simply delaying resolution of the case." TCI Group Life Ins. Plan, 244 F.3d at 701 (quoting Falk,

16   739 F.2d at 463; Thompson v. Am. Home Assur. Co., 95 F.3d 429, 433–34 (6th Cir. 1996)).

17   "Merely being forced to litigate on the merits cannot be considered prejudicial for purposes" of

18   setting aside the default.  Id.  Rather, the standard is "whether [a plaintiff's] ability to pursue his

19   claim will be hindered."  Falk, 739 F.2d at 463; see also Thompson, 95 F.3d at 433–34 (to be

20   considered prejudicial, "the delay must result in tangible harm such as loss of evidence, increased

21   difficulties of discovery, or greater opportunity for fraud or collusion").

22      Here, Plaintiff has failed to demonstrate prejudice if the entry of default is set aside.  This

23   case was filed in June 2021, less than four months ago, and Defendant was purportedly served ten

24   days later.  (ECF Nos. 1, 4.)  Thus, no substantial amount of time has lapsed since Defendant was

25   served to the time of filing this motion.  The Court does not find that such a delay will increase the

26   likelihood that witnesses' memories have faded, that pertinent records have disappeared or been

27   destroyed, or other "tangible harm" indicative of prejudice.  Thompson, 95 F.3d at 433–34.  Rather,

28   the Court finds that setting aside the default in this case will merely reestablish the parties' positions

as they were prior to Defendant's failure to respond.  TCI Group Life Ins. Plan, 244 F.3d at 701.

The Court therefore finds any prejudice Plaintiff would suffer from this slight delay would be

outweighed by the other factors and the preferred policy that cases be decided on the merits.

Finally, the Court notes that at the hearing on the motion, Plaintiff's counsel stated that "if

the Court wished to vacate the default, that's . . . fine . . . ."  Based on the foregoing, the Court finds

good cause exists to set aside the entry of default against Defendant.   Therefore, the Court

recommends Defendant's motion to set aside the entry of default be granted.

### III.

### PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT

Under Federal Rule of Civil Procedure 55, default judgment is a two-step process: an entry

of default judgment must be preceded by an entry of default.  See Fed. R. Civ. P. 55; see also Eitel

v. McCool, 782 F.2d 1470, 1471 (9th Cir. 1986).

In light of the Court's recommendation to grant Defendant's motion to set aside entry of

default, Plaintiff's motion for default judgment must be denied as moot.  See Novak v. Mendez,

No. 2:20-cv-01721 JAM AC, 2021 WL 274784, at *2 (E.D. Cal. Jan. 27, 2021), R. & R.

adopted,  2021 WL 780815 (E.D. Cal. Mar. 1, 2021); Joe Hand Promotions, Inc. v. Bernal, No.

1:12-CV-01512-AWI-SMS, 2013 WL 1402464, at *1 (E.D. Cal. Apr. 5, 2013).

### IV.

### DEFENDANT'S MOTION TO DISMISS

Defendant seeks dismissal of the complaint with prejudice for lack of jurisdiction, on the

basis that Plaintiff lacks standing to bring this action.

**A.      Legal Standard**

Federal courts are courts of limited jurisdiction with no inherent subject matter jurisdiction,

and they can adjudicate only those cases that the Constitution and statutes empower them to

adjudicate.  See Kokkonen v. Guardian Life Ins. Co., 511 U.S. 375, 377 (1994).  The courts' powers

are "not to be expanded by judicial decree . . . [i]t is to be presumed that a cause lies outside this

limited jurisdiction . . .  and the burden of establishing the contrary rests upon the party asserting

jurisdiction."  Id. (action involving Rule 41 dismissal) (citations omitted); see also Emrich v.

1  Touche Ross & Co., 846 F.2d 1190, 1195 (9th Cir. 1988) (noting same with respect to removal

2  jurisdiction); Griffin v. W. Bay Properties, Inc., No. CV 10-7072 PSG (FFMx), 2011 WL 2437493,

3  at *1 (C.D. Cal. Jun. 17, 2011) (noting same in context of Rule 12(b)(1) motion to dismiss).

4      Article III of the United States Constitution limits the jurisdiction of federal courts to

5  "actual, ongoing cases or controversies."  Lewis v. Cont'l Bank Corp., 494 U.S. 472, 477 (1990).

6  "This case-or-controversy requirement subsists through all stages of federal judicial proceedings."

7  Spencer v. Kemna, 523 U.S. 1, 7 (1998) (quoting Lewis, 494 U.S. at 477–78).

8      A motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1) may

9  challenge jurisdiction either on the face of the pleadings (a "facial attack"), or by presenting

10 extrinsic evidence for the court's consideration (a "factual attack").  Safe Air for Everyone v.

11 Meyer, 373 F.3d 1035, 1039 (9th Cir. 2004).  "In a facial attack, the challenger asserts that the

12 allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction."

13 Id.  "The district court resolves a facial attack as it would a motion to dismiss under Rule 12(b)(6):

14 Accepting the plaintiff's allegations as true and drawing all reasonable inferences in the plaintiff's

15 favor, the court determines whether the allegations are sufficient as a legal matter to invoke the

16 court's jurisdiction."  Leite v. Crane Co., 749 F.3d 1117, 1121 (9th Cir. 2014) (citation omitted).

17 A factual attack, on the other hand, challenges the truth of the allegations that would otherwise

18 invoke federal jurisdiction.  Safe Air for Everyone, 373 F.3d at 1039.  "Once the moving party has

19 converted the motion to dismiss into a factual motion by presenting affidavits or other evidence

20 properly brought before the court, the party opposing the motion must furnish affidavits or other

21 evidence necessary to satisfy its burden of establishing subject matter jurisdiction."  Savage v.

22 Glendale Union High School, Dist. No. 205, Maricopa Cnty., 343 F.3d 1036, 1039 n.2 (9th Cir.

23 2003) (citing St. Clair v. City of Chico, 880 F.2d 199, 201 (9th Cir. 1989)); see also Ass'n of Am.

24 Med. Colleges v. United States, 217 F.3d 770, 778–79 (9th Cir. 2000) (same).

25      **B.      Discussion**

26      As an initial matter, the Court notes Plaintiff's opposition to Defendant's combined motion

27 to set aside entry of default and motion to dismiss only addresses the matter of the default and is

28 devoid of any substantive argument with respect to Defendant's motion to dismiss.  When asked

1    about this briefing deficiency at the hearing on the motion, counsel for Plaintiff represented that he

2    felt because the "issue [has] been litigated for. . . the last six years, on basic standing, . . . basic

3    issues such as this, [Plaintiff] didn't feel it was even necessary [to brief the arguments]."  However,

4    Plaintiff's position is not supported in law.  The Court reminds Plaintiff that findings in prior

5    unrelated cases she has brought against different public places of accommodation are not binding

6    on the Court for purposes of determining the issues in the instant matter.  Indeed, they may not

7    even be persuasive, given the specific factual allegations in an ADA case that must be evaluated

8    on a case-by-case basis.  See, e.g., Chapman v. Pier 1 Imports (U.S.) Inc., 631 F.3d 939, 947 (9th

9    Cir. 2011) (standing premised on showing that the plaintiff's 'full and equal enjoyment' of the

10   facility" was prevented by the defendant "on account of [the plaintiff's] particular disability.")

11   Thus, Plaintiff is expected to address and fully brief all issues she deems relevant to the instant

12   matter within the briefing schedule set forth under the Local Rules.  As previously discussed herein,

13   where a plaintiff fails to address certain arguments in her opposition, she is deemed to have

14   conceded those points.  Gordon, 2009 WL 322891, at *4 n.4; Ramirez, 941 F. Supp. 2d at 1210;

15   Tatum, 2007 WL 419463, at *3; Adams, 2020 WL 4196248, at *6; Certified Nutraceuticals, Inc.,

16   2018 WL 1245261, at *2.  Bearing this key principle in mind, the Court evaluates the allegations

17   in the complaint against the arguments raised in Defendant's motion to dismiss.

18        Defendant moves for dismissal of the action pursuant to Rule 12(b)(1) on the basis that

19   Plaintiff lacks Article III standing.[4]  In particular, Defendant challenges Plaintiff's first cause of

20   action under the ADA.  As Defendant submits no affidavits or other evidence in support of its

21   motion to dismiss, Defendant brings a facial jurisdictional challenge.  (See generally Def.'s Mot.);

22   see also Safe Air for Everyone, 373 F.3d at 1039.

23        As the party invoking jurisdiction, Plaintiff bears the burden of establishing standing.  Lujan

24   v. Defenders of Wildlife, 504 U.S. 555, 561 (1992).  For Plaintiff to allege Article III standing, she

25   must sufficiently plead an (i) injury-in-fact, (ii) that is causally connected to Defendant's challenged

26

27   [4] Defendant additionally asserts its jurisdictional argument pursuant to Rule 12(b)(5) and appeals to the Court's independent authority to examine its subject matter jurisdiction *sua sponte*.  Since the Court finds Defendant's argument under Rule 12(b)(1) sufficiently persuasive, however, it need not consider Defendant's alternative

28   jurisdictional arguments under the additional authorities.

1  conduct, and (iii) likely to be "redressed by a favorable decision."  Id. at 560–61 (quoting Simon v.

2  E. Ky. Welfare Rts. Org., 426 U.S. 26, 38, 41–43 (1976) (remaining citations omitted)).

3       "The existence of federal standing 'often turns on the nature and source of the claim

4  asserted.'  Accordingly, our standing analysis must focus on the nature and source of [a plaintiff's]

5  claim — discrimination as defined by the ADA."  Chapman, 631 F.3d at 947 (citation omitted).

6  The Ninth Circuit has held there are two ways in which an ADA plaintiff may establish standing to

7  sue for injunctive relief: the plaintiff can either demonstrate "deterrence" or "injury-in-fact coupled

8  with an intent to return to a noncompliant facility."  Id. at 944.

9       In her complaint, Plaintiff asserts she was deterred from entering the hotel because of the

10  lack of access aisle.  (Compl. ¶¶ 10–11.)  Alternatively, Plaintiff alleges that, due to her disability

11  requiring her to use a wheelchair, an access aisle is needed so that Plaintiff can maneuver without

12  threat of danger from other vehicles and without other encumbrances blocking [her] pathway [to

13  the lobby].  (Id. at ¶ 10.)  Plaintiff also alleges she intends to re-visit the hotel in August 2021.  (Id.

14  at ¶ 12.)  Defendant directly challenges Plaintiff's allegations under the injury-in-fact and intent to

15  return element, but also suggests Plaintiff has insufficiently pleaded deterrence, as follows.

16       1.  Injury-in-Fact and Intent to Return

17       Defendant argues Plaintiff fails to allege an actual or imminent injury due to the alleged

18  loading zone "access aisle" violation at the hotel, and that Plaintiff has failed to allege facts

19  sufficient to demonstrate a specific intent to return to Defendant's hotel.  In support of its

20  arguments, Defendant references two district court cases from this Circuit in which the courts

21  rejected the same "access aisle" argument advanced here on the basis that the plaintiff failed to

22  establish standing: (1) Strojnik v. Bakersfield Convention Hotel I, LLC ("Bakersfield"), 436 F.

23  Supp. 3d 1332, 1340 (E.D. Cal. 2020) (rejecting alleged barriers and injuries as conclusory); and

24  (2) Strojnik v. Orangewood LLC, No. CV 19-00946 DSF (JCx), 2020 WL 11192872, at *2, *5 (C.

25  D. Cal. Jan. 22, 2020) (finding the plaintiff failed to sufficiently allege a concrete and particularized

26  injury related to the purported absence of a "marked passenger drop off zone" and rejecting

27  allegation of deterrence as conclusory), affirmed, 829 F. App'x 783 (9th Cir. 2020).[5]

28  [5] Defendant maintains these cases were filed by Plaintiff's attorney, Mr. Strojnik; however, the Court notes the cases

### a.    Injury-in-Fact

The alleged injury-in-fact must be: (i) "concrete and particularized" and (ii) "actual or imminent, not 'conjectural' or 'hypothetical.' " Lujan, 504 U.S. at 560 (citing Allen v. Wright, 468 U.S. 737, 756 (1984), abrogated on other grounds by Lexmark Int'l, Inc. v. Static Control Components, Inc., 572 U.S. 118 (2014); quoting Whitmore v. Arkansas, 495 U.S. 149, 155 (1990)). Because injunctive relief is the only remedy to individuals under Title III of the ADA, Plaintiff must show she faces a "real and immediate threat of repeated injury" to establish an injury-in-fact for purposes of standing. Chapman, 631 F.3d at 946 (quoting Fortyune v. Am. Multi-Cinema, Inc., 364 F.3d 1075, 1081 (9th Cir. 2004)). "An ADA plaintiff suffers a legally cognizable injury under the ADA if she is 'discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, [or] facilities . . . of any place of public accommodation.' " Chapman, 631 F.3d at 952 (quoting 42 U.S.C. § 12182(a)) (alteration in original). Discrimination under the ADA is defined to include "a failure to remove architectural barriers, . . . in existing facilities, . . . where such removal is readily achievable." 42 U.S.C. § 12182(b)(2)(A)(iv). Thus, to state a claim for discrimination under the ADA because of denial of public accommodations due to "the presence of architectural barriers in an existing facility, a plaintiff must allege and prove that: '(1) the existing facility at the defendant's place of business presents an architectural barrier prohibited under the ADA, and (2) the removal of the barrier is readily achievable.' " Hubbard v. 7-Eleven, Inc., 433 F. Supp. 2d 1134, 1138 (S.D. Cal. 2006) (quoting Parr v. L & L Drive-Inn Rest., 96 F. Supp. 2d 1065, 1085 (D. Haw. 2000)); see also Wyatt v. Ralphs Grocery Co., 65 F. App'x 589, 590 (9th Cir. 2003). "Whether a facility is 'readily accessible' is defined, in part, by the ADA Accessibility

---

were actually filed by counsel's father, Peter Strojnik, Sr. Defense counsel corrected this inadvertent error — including her mistaken assertion that Plaintiff's attorney was disbarred in the State of Arizona — via an amended declaration following the parties' Court-ordered meet and confer communications. (See ECF Nos. 16-2, 19, 20, 22-3.) Plaintiff's counsel has also indicated he remains actively licensed in both Arizona and California (see ECF No. 22-3 at 4) and an independent review of the State Bar of California's website confirms Mr. Strojnik has been publicly reproved in October 2018 in State Bar Case No. 17-J-00133 for a matter related to his conduct in an Arizona case, and that disciplinary charges were filed against him in State Bar Case Nos. 20-H-30288 and 21-O-30530 on May 12, 2020, and July 30, 2021, respectively, but that Mr. Strojnik currently retains an active license in the State of California as well. Attorney Search, State Bar of California, http://members.calbar.ca.gov/fal/Licensee/Detail/242728 (last visited October 6, 2021).

1   Guidelines ('ADAAG').["]6 Chapman, 631 F.3d at 945 (citing 28 C.F.R. § 36.406(a); 28 C.F.R. Pt.

2   36, App. A; Miller v. Cal. Speedway Corp., 536 F.3d 1020, 1024–25 (9th Cir. 2008) (describing

3   the ADA's regulatory framework), cert. denied, 555 U.S. 1208 (2009)).

4        "Under the ADA, when a disabled person encounters an accessibility barrier violating its

5   provisions, it is not necessary for standing purposes that the barrier completely preclude the plaintiff

6   from entering or from using a facility in any way.  Rather, the barrier need only interfere with the

7   plaintiff's 'full and equal enjoyment' of the facility" "on account of his particular disability."

8   Chapman, 631 F.3d at 947 (citations omitted).  Thus, the Ninth Circuit held, "once a disabled person

9   has encountered a barrier violating the ADA, that plaintiff will have a personal stake in the outcome

10   of the controversy so long as his or her suit is limited to barriers related to that person's particular

11   disability."  Id. (internal quotations and citation omitted).

12        Here, Plaintiff asserts Defendant's hotel does not have an access aisle, thus constituting a

13   barrier to her access to the hotel lobby.  (Compl. ¶ 10.)  Plaintiff claims this barrier constitutes a

14   violation of 42 U.S.C. §§ 12182(a) and 12182(b)(2)(iv), and Section 503 of the 2010 Standards.[7]

15   (Id. at ¶¶ 19, 21.)

16        Defendant, however, disputes that Plaintiff has identified a "barrier" under the ADA at all.

17   In sum, Defendant argues the ADAAG and 2010 ADA Standards only require a hotel to maintain

18

19   [6] Congress entrusted the Attorney General with promulgating the implementing regulations for Title III.  Fortyune, 364 F.3d at 1080 (citing 42 U.S.C. § 12186(b)).  The Attorney General adopted the ADAAG as the "Standards for

20   Accessible Design," as they lay out the technical structural requirements of places of public accommodation and are applicable during the design, construction, and alteration of such facilities.  Id. (citing 28 C.F.R. Pt. 36, App. A).  The

21   "1991 Standards" have been republished as Appendix D to 28 C.F.R. part 36.  The term "2004 ADAAG" refers to the regulations codified at 36 C.F.R. 1191, App. B and D.  "The term '2010 Standards' refers to the 2010 ADA Standards

22   for Accessible Design, which consist of the 2004 ADAAG and the requirements contained in subpart D of 28 CFR part 36."  28 C.F.R. 1191 Pt. 36, App. A.

23   [7] The Court notes that 42 U.S.C. §§ 12182(a) and (b)(2)(iv) do not speak directly to an access aisle or loading zone but rather, prohibit discrimination based on disability in general.  42 U.S.C. §§ 12182(a) provides: "No individual shall be

24   discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or

25   leases to), or operates a place of public accommodation."  42 U.S.C. §§ 12182(b)(2)(iv) concerns the "failure to remove architectural barriers, and communication barriers that are structural in nature, in existing facilities, and transportation

26   barriers in existing vehicles and rail passenger cars used by an establishment for transporting individuals (not including barriers that can only be removed through the retrofitting of vehicles or rail passenger cars by the installation of a

27   hydraulic or other lift), where such removal is readily achievable."  Plaintiff references Section 503 four times in her motion for default judgment but does not directly quote the text of the guideline or provide a citation to it.  Upon

28   independent review, the Court determined the entirety of the 2010 Standards may also be reviewed through the Department of Justice's ADA website.  See https://www.ada.gov/regs2010/2010ADAStandards/2010ADAstandards.htm (last accessed October 6, 2021).

an access aisle if it has a loading zone in front of its lobby for passenger drop-offs.  Plaintiff fails to allege non-conclusory facts showing that the hotel has a passenger loading zone; therefore, she has not established that Defendant was required to have an access aisle, and the absence of an ADAAG/ADA Standards violation precludes Plaintiff's ADA claim.  Plaintiff, by contrast, fails to provide any legal authority to counter Defendant's motion, nor does she even address Defendant's arguments concerning the factual content of her complaint.  For these reasons, the Court finds Defendant's argument is well-taken.

Section 503 of the 2010 ADA Standards governs passenger loading zones.  Under Section 503.3, a passenger loading zone is required to provide an access aisle adjacent to the vehicle pull-up space.  As Defendant correctly submits, this section does not state that all places of public accommodation are required to have loading zones.[8]  Plaintiff has not identified a specific provision of the ADAAG or 2010 ADA Standards requiring a hotel to have a loading zone or otherwise addressed this premise; therefore, she has conceded this point for purposes of Defendant's motion to dismiss.  See Bakersfield, 436 F. Supp. 3d at 1339 (indicating that a plaintiff must identify a specific provision of the ADAAG the defendant violated to establish standing); see also Gordon, 2009 WL 322891, at *4 n.4; Ramirez, 941 F. Supp. 2d at 1210; Tatum, 2007 WL 419463, at *3; Adams, 2020 WL 4196248, at *6; Certified Nutraceuticals, Inc., 2018 WL 1245261, at *2.  Thus, the Court finds Defendant's argument that Plaintiff cannot establish an ADA violation for failure to have an access aisle if she has not established the existence of a loading zone to be persuasive at this stage in the pleadings.

With respect to the existence of a passenger loading zone in the instant matter, Plaintiff alleges in a single statement, "Defendant's hotel has a passenger loading zone because the pickup and drop-off area directly outside the lobby is designed and intended as a loading zone."  (ECF No. 1 ¶ 9.)  Defendant argues this allegation, without more, is impermissibly conclusory.  Particularly

---

[8] Defendant additionally takes issue with Plaintiff's illustration of a purportedly "correct access aisle" (see Compl. ¶¶ 13–14), as neither the ADAAG nor 2010 ADA Standards require striped line markings within an access aisle in the manner depicted by Plaintiff's illustration.  A simple review of Section 503 reveals Defendant is correct.  See also Bakersfield, 436 F. Supp. 3d at 1340 (finding photographs captioned as ADA violations to be legal conclusions, not factual allegations sufficient to establish the existence of any barrier to accessibility, "By failing to allege sufficiently the barriers to accessibility he encountered, Plaintiff has failed to establish a concrete or real injury [for standing].") (citations omitted).

in light of Plaintiff's silence on this issue, the Court is inclined to agree.  For example, Plaintiff does not provide photos or measurements of the purported loading zone, or otherwise describe what it looks like, she does not allege that she confirmed with any hotel employee that the hotel has a loading zone, and she alleges no facts describing the area in front of Defendant's hotel to show the existence of a loading zone.  Moreover, the phrase "designed and intended" is vague, conclusory, and arguably outside the realm of Plaintiff's personal knowledge.  Without more, Plaintiff's allegation is insufficient to establish the existence of a loading zone outside the front of Defendant's particular hotel.  See Strojnik v. Vill. 1017 Coronado, Inc. (Coronado), No. 19-cv-02210-BAS-MSB, 2020 WL 3250608 (S.D. Cal. Jun. 16, 2020) (finding plaintiff failed to allege injury in fact where he did not allege he confirmed with hotel staff that the perceived barriers existed and did not allege he attempted to see if alternate accommodations were available to him).

In sum, Plaintiff's allegations are insufficient to show there are barriers to accessibility under the ADAGG or the 2010 ADA Standards.  By failing to sufficiently allege the existence of a barrier, Plaintiff has failed to establish a concrete or real injury.  On this basis alone, Plaintiff's ADA claim fails, and Defendant's motion must be granted.  Nevertheless, cognizant of the fact that this is the first iteration of Plaintiff's claims with respect to the instant matter before this Court, and the possibility that Plaintiff may cure the identified pleading defects through amendment, the undersigned shall recommend that Defendant's motion to dismiss be granted with leave to amend. Lopez v. Smith, 203 F.3d 1122, 1130 (9th Cir. 2000) (en banc) (quoting Doe v. United States, 58 F.3d 484, 497 (9th Cir. 1995)).  In light of the Court's recommendation that Plaintiff be permitted leave to amend, in the interests of judicial efficiency, the Court will briefly address the pleading deficiencies identified by Defendant's remaining arguments.

### b.    Intent to Return

Because Plaintiff is seeking injunctive relief, she must additionally establish a "real and immediate threat of repeated injury" or, in other words, that there is "a sufficient likelihood that [s]he will again be wronged in a similar way[.]"  Fortyune, 364 F.3d at 1081 (quoting O'Shea v. Littleton, 414 U.S. 488, 496 (1974); City of Los Angeles v. Lyons, 461 U.S. 95, 111 (1983)) (internal quotation marks omitted).  "An ADA plaintiff establishes such a real and immediate threat

if '[s]he intends to return to a noncompliant place of public accommodation where [s]he will likely suffer repeated injury.' " Ervine v. Desert View Reg'l Med. Ctr. Holdings, LLC, 753 F.3d 862, 867 (9th Cir. 2014) (internal citation omitted). A general intent to return to a public accommodation is "insufficient to confer standing in an action for injunctive relief." Molski v. Kahn Winery, 405 F. Supp. 2d 1160, 1164 (C.D. Cal. 2005) (citing Lujan, 504 U.S. at 564). Accordingly, a plaintiff "lacks standing if he is indifferent to returning . . . or if his alleged intent to return is not genuine." Chapman, 631 F.3d at 953. In determining whether a plaintiff's likelihood of returning to a defendant's place of public accommodation is sufficient to confer standing, courts generally consider four factors: (1) the proximity of the place of public accommodation to the plaintiff's residence; (2) the plaintiff's past patronage of the defendant's business; (3) the definitiveness of the plaintiff's plans to return; and (4) the plaintiff's frequency of travel near the defendant. Harris v. Del Taco, 396 F. Supp. 2d 1107, 1113, (C.D. Cal. 2005) (citing Molski v. Arby's Huntington Beach, 359 F. Supp. 2d 938, 947 (C.D. Cal. 2005)).

Plaintiff does not allege facts relating to her proximity from Defendant's hotel, nor does she allege that she ever previously visited the hotel. Thus, the Court cannot determine that the first two factors support a "genuine" intent to return. Chapman, 631 F.3d at 953.

As to the remaining two factors, Plaintiff alleges she and her husband are "avid travelers to California for purposes of leisure travel and to 'test' whether various hotels comply with disability access laws" and that she plans to "re-visit [Defendant's hotel] in August [2021]. . . ." (ECF No. 1 ¶¶ 7, 12.) But the Ninth Circuit, applying the standard set forth by the Supreme Court in Lujan, explained that mere conclusory assertions that an ADA plaintiff intends to return to a place are insufficient:

> A plaintiff's "profession of an 'inten[t]' to return to the places [he] had visited before" is not sufficient to establish standing because "[s]uch 'some day' intentions — without any description of concrete plans, or indeed even any specification of *when* the some day will be — do not support a finding of the 'actual or imminent' injury that our cases require.

Feezor v. Sears, Roebuck and Co., 608 F. App'x 476, 477 (9th Cir. 2015) (quoting Lujan, 504 U.S. at 564) (alteration and emphasis in original). Plaintiff's plan to re-visit the hotel sometime is August

16

is similarly too vague.  See Brooke v. CSP Hosp. LLC, No. EDCV 20-2202 JGB (SHKx), 2021 WL 401990, at *4 (C.D. Cal. Feb. 2, 2021) (plaintiff's purported intent to re-visit the defendant's hotel "later this year" was too speculative to establish intent to return).  Furthermore, Plaintiff's visits to California are not specific to Fresno, or Defendant's hotel in particular.  See, e.g., Strojnik v. Four Sisters Inns, Inc., No. 2:19-CV-02991-ODW (JEMx), 2019 WL 6700939, at *4 (C.D. Cal. Dec. 9, 2019) (plaintiff's "regular" visits to California but not the Santa Monica area in particular was insufficient to support an intent to return to the defendant's hotel); CSP Hosp. LLC, 2021 WL 401990, at *5 ("Plaintiff fails to allege the frequency of her travel or 'specific ties' to the Desert Cities area in general, or the Hotel in particular.") (citing Johnson v. Overlook at Blue Ravine, LLC, No. 2:10-CV-02387-JAM-DAD, 2012 WL 2993890, at *3 (E.D. Cal. Jul. 20, 2012)).  This vague and generalized phrasing — coupled with the absence of allegations that, for example, Plaintiff ever before patronized Defendant's hotel, had prior reservations, had any specific plans to revisit the area, or contacted hotel staff to inquire into whether the purported barrier was corrected or going to be corrected, is akin to the vague "some day" allegations expressly rejected by the Lujan court and insufficient to establish intent to return.

Further, Defendant proffers that Plaintiff fails to plausibly allege an intent to return to the instant hotel where the exact same intent is alleged with respect to thirty-three other hotels in the same vicinity, against whom Plaintiff also filed ADA claims in early 2021.  (Def.'s Mot. at 2, 8 (citing Coronado, 2020 WL 3250608 (finding plaintiff failed to plausibly allege intent to return where he filed at least twenty-two other ADA lawsuits against nearby hotels, alleging his intent to return to each hotel when the alleged barriers were removed); see also ECF No. 16-2 at 5–7 (PACER search results for cases filed by Plaintiff).)  An independent review of the cases identified from Defendant's PACER search confirmed to the Court that twenty-nine nearly identical complaints filed in the Eastern District indicate Plaintiff intends to return to that defendant's hotel in August 2021.[9]  Two additional Eastern District cases, one of which is a verified complaint,

---

[9] Brooke v. Elk Grove Fin. LP, No. 2:21-cv-00855 (E.D. Cal. May 12, 2021); Brooke v. Manteca Lodging LLC, No. 2:21-cv-00856 (E.D. Cal. May 12, 2021); Brooke v. WFP-Turlock LLC, No. 1:21-cv-00760 (E.D. Cal. May 12, 2021); Brooke v. Bakerao LLC, No. 2:21-cv-00864 (E.D. Cal. May 12, 2021); Brooke v. Jutla, No. 2:21-cv-00865 (E.D. Cal. May 12, 2021); Brooke v. Louise Ave. Partners LP, No. 2:21-cv-00866 (E.D. Cal. May 13, 2021); Brooke v. MLK-Family Properties LLC, No. 2:21-cv-00867 (E.D. Cal. May 13, 2021); Brooke v. Parvati LLC, No. 2:21-cv-

simply indicate an intent to return "later this summer."[10]  Further, the Court notes that thirteen additional, nearly identical verified complaints filed in the Central District indicate an intent to re-visit that defendant's hotel in June 2021, with another five verified complaints indicating an intent to rev-visit in October 2021.[11]  And in an additional six, nearly identical verified complaints filed in the Northern District, Plaintiff indicates an intent to re-visit the hotels of those defendants "later this summer"; in five other verified complaints, she indicates and intent to revisit "later this summer, in September (and again in October)."[12]  Plaintiff's opposition, again, is silent with respect

00868 (E.D. Cal. May 13, 2021); Brooke v. Queen Hosp. Inc., No. 2:21-cv-00869 (E.D. Cal. May 13, 2021); Brooke v. Bakerao, LLC, No. 1:21-cv-00765 (E.D. Cal. May 12, 2021); Brooke v. Khatri & Sons LP, No. 1:21-cv-00772 (E.D. Cal. May 13, 2021); Brooke v. Aleena Inv. LLC, No. 1:21-cv-00788 (E.D. Cal. May 16, 2021); Brooke v. Maxicom Inv. LLC, No. 2:21-cv-00882 (E.D. Cal. May 16, 2021); Brooke v. N&J Hotel Mgmt. LLC, No. 2:21-cv-00883 (E.D. Cal. May 16, 2021); Brooke v. Lathrop Hotel LP, No. 2:21-cv-00884 (E.D. Cal. May 16, 2021); Brooke v. Omshiva LLC, No. 1:21-cv-00948 (E.D. Cal. Jun. 16, 2021); Brooke v. Sethi, No. 1:21-cv-00949 (E.D. Cal. Jun. 16, 2021); Brooke v. S&B Holdings – Turlock LP, No. 1:21-cv-00950 (E.D. Cal. Jun. 16, 2021); Brooke v. Valley Prime Hosp. Inc., No. 1:21-cv-00951 (E.D. Cal. Jun. 16, 2021); Brooke v. Stan Express LP, No. 1:21-cv-00957 (E.D. Cal. Jun. 16, 2021); Brooke v. Modesto Hosp. LLP, No. 1:21-cv-00958 (E.D. Cal. May 16, 2021); Brooke v. Krishna Hosp. LLC, No. 1:21-cv-00960 (E.D. Cal. Jun. 16, 2021); Brooke v. Bluemill LLC, No. 1:21-cv-00961 (E.D. Cal. Jun. 16, 2021); Brooke v. Billa Hosp. Madera LLC, No. 1:21-cv-00968 (E.D. Cal. Jun. 17, 2021); Brooke v. Shastriji Mgmt. LLC, No. 1:21-cv-00973 (E.D. Cal. May 17, 2021); Brooke v. Thompson & Partners, LLP, No. 2:21-cv-01081 (E.D. Cal. Jun. 17, 2021); Brooke v. Pinnacle Hosp. & Dev. Inc., No. 1:21-cv-00981 (E.D. Cal. Jun. 17, 2021); Brooke v. Ambika LLC, No. 1:21-cv-00982 (E.D. Cal. Jun. 17, 2021); Brooke v. Sah Freeway Drive LLC, No. 2:21-cv-01107 (E.D. Cal. Jun. 22, 2021); Brooke v. 1345 Com. Way LLC, No. 2:21-cv-01108 (E.D. Cal. Jun. 22, 2021).

[10] Brooke v. Dre Caco LP, No. 2:21-cv-01354 (E.D. Cal. Aug. 1, 2021); Brooke v. H&B Hosp. LLC, No. 2:21-cv-01355 (E.D. Cal. Aug. 1, 2021).

[11] See Brooke v. RLJ EM Irvine LP, No. 8:21-cv-00730 (C.D. Cal. Apr. 19, 2021); Brooke v. BRE SSP Prop. Owner LLC, No. 8:21-cv-00731 (C.D. Cal. Apr. 20, 2021); Brooke v. MSP Costa Mesa LP, No. 8:21-cv-00732 (C.D. Cal. Apr. 20, 2021); Brooke v. CMP Buena Park Owner LP, No. 8:21-cv-00733 (C.D. Cal. Apr. 20, 2021); Brooke v. JWMFE Anaheim LLC, No. 8:21-cv-00734 (C.D. Cal. Apr. 20, 2021); Brooke v. Imperial Hotel Group LLC, No. 8:21-cv-00750 (C.D. Cal. Apr. 20, 2021); Brooke v. JHC Inv. Inc., No. 8:21-cv-00751 (C.D. Cal. Apr. 20, 2021); Brooke v. Landmark Marriott Suites LLC, No. 8:21-cv-00752 (C.D. Cal. Apr. 20, 2021); Brooke v.Henry Jae LDe, No. 8:21-cv-00753 (C.D. Cal. Apr. 20, 2021); Brooke v. S3 Hosp. LLC, No. 8:21-cv-00754 (C.D. Cal. Apr. 20, 2021); Brooke v. USA Hotel Group LLC, No. 8:21-cv-00756 (C.D. Cal. Apr. 20, 2021); Brooke v. Wesball LLC, No. 8:21-cv-00757 (C.D. Cal. Apr. 20, 2021); see also Brooke v. Excel Buena Park II LP, No. 2:21-cv-06207 (C.D. Cal. Aug. 1, 2021); Brooke v. Anaheim Coachman Inn LLC, No. 5:21-cv-01287 (C.D. Cal. Aug. 1, 2021); Brooke v. Azul Hosp. Group LLC, No. 8:21-cv-01297 (C.D. Cal. Aug. 1, 2021); Brooke HHC Ha Inv. II Inc., No. 8:21-cv-01298 (C.D. Cal. Aug. 1, 2021); Brooke Huntington Beach Hotel LP, No. 8:21-cv-01299 (C.D. Cal. Aug. 1, 2021).  Notably, in Brooke v. Tides Hosp., No. 8:21-cv-00755 (C.D. Cal. Apr. 20, 2021), Plaintiff appears to have voluntarily dismissed the action after the court ordered her to show cause why it should not decline to exercise supplemental jurisdiction over Plaintiff's Unruh Act claim.  The Court does not include this case in its consideration of the number of hotels Plaintiff intends to re-visit.

[12] See Brooke v. Butterfly Effect Hotels LLC, No. 4:21-cv-05145 (N.D. Cal. Jul. 2, 2021); Brooke v. Dre Caco LP, No. 3:21-cv-05146 (N.D. Cal. Jul. 2, 2021); Brooke v. H&B Hosp. LLC, No. 3:21-cv-05147 (N.D. Cal. Jul. 2, 2021); Brooke v. KHP V Napa LLC, No. 3:21-cv-05148 (N.D. Cal. Jul. 2, 2021); Brooke v. Reneson Napa LLC, No. 4:21-cv-05149 (N.D. Cal. Jul. 2, 2021); Brooke v. YHB Napa LLC, No. 3:21-cv-05150 (N.D. Cal. Jul. 2, 2021); Brooke v. Colony Northstar Inc., No. 3:21-cv-05151 (N.D. Cal. Jul. 3, 2021); Brooke v. Atrium Hosp. LP, No. 5:21-cv-05152

1    to Defendant's substantive argument concerning her purported intent to return and Defendant's

2    argument is again well-taken.  Gordon, 2009 WL 322891, at *4 n.4; Ramirez, 941 F. Supp. 2d at

3    1210; Tatum, 2007 WL 419463, at *3; Adams, 2020 WL 4196248, at *6; Certified Nutraceuticals,

4    Inc., 2018 WL 1245261, at *2.

5            Indeed, while the Court may not weigh the veracity of Plaintiff's statements at the pleadings

6    stage, it may nevertheless assess whether Plaintiff has "nudge[d] [her] claims . . . across the line

7    from conceivable to plausible" for purposes of a facial challenge.  Iqbal, 556 U.S. at 680; see also

8    Eclectic Properties E., LLC v. Marcus & Millichap Co., 751 F.3d 990, 995–97 (9th Cir. 2014)

9    ("Although a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof

10   is improbable, plaintiffs must include sufficient factual enhancement to cross the line between

11   possibility and plausibility.") (internal quotations and citations omitted).  In this case, the judicially

12   noticeable fact that there exist approximately thirty other nearby hotels concurrently being sued by

13   Plaintiff, which have received the same vague assurances of a future re-visit in August 2021,

14   strongly cuts against a finding that Plaintiff has satisfied the pleading standard required by Iqbal.

15   See Coronado, 2020 WL 3250608 ("It defies credulity that Plaintiff intends to visit over twenty

16   different establishments in San Diego when he lives in Phoenix.").  For all of these reasons, the

17   Court finds Plaintiff fails to allege sufficient facts to establish an intent to return in support of her

18   ADA claim.

19            2.    Deterrence

20           Finally, the Court addresses the sufficiency of Plaintiff's deterrence allegation.  As noted

21   above, Plaintiff may establish standing by demonstrating either "deterrence" or "injury-in-fact

22   coupled with an intent to return to a noncompliant facility."  Chapman, 631 F.3d at 944, 949.  "Title

23   III explicitly provides that it does not require a person with a disability to engage in a futile gesture

24   if such person has actual notice that a person or organization . . . does not intend to comply with

25   the ADA."  Pickern v. Holiday Quality Foods Inc., 293 F.3d 1133, 1136 (9th Cir. 2002) (quoting

26   

27   (N.D. Cal. Jul. 3, 2021); Brooke v. Morgan Hill Hotel LP, No. 5:21-cv-05921 (N.D. Cal. Aug. 1, 2021); Brooke v. Campbell HHG Hotel Dev. LP, No. 5:21-cv-05923 (N.D. Cal. Aug. 1, 2021); Brooke v. HHLP Sunny Associates LLC, No. 5:21-cv-05924 (N.D. Cal. Aug. 1, 2021); Brooke v. Almaden Ranch LLC, No. 5:21-cv-05932 (N.D. Cal. Aug. 1, 2021); Brooke v. Sunbake LLC, No. 5:21-cv-05933 (N.D. Cal. Aug. 1, 2021).

28

1  Teamsters v. United States, 431 U.S. 324, 366 (1977) (internal quotations omitted)).

2       Here, Plaintiff alleges she "gained actual and personal knowledge of a barrier while visiting

3  Defendant's hotel, and as a result, she was deterred from entering the hotel."  The Court finds this

4  allegation wholly conclusory.  See Whitaker v. Tesla Motors, Inc., 985 F.3d 1173, 1177 (9th Cir.

5  2021) (affirming district court's dismissal of complaint as conclusory where plaintiff's allegations

6  merely recited the elements of an ADA claim); see also Feezor, 608 F. App'x at 477 ("Plaintiff's

7  conclusory statements that he is deterred from visiting Sears are insufficient to demonstrate that he

8  would shop at Sears if it were accessible.").  As Defendant notes, Plaintiff does not allege that she

9  spoke to Defendant or anyone at the hotel prior to bringing this action, or other facts to show that

10 Defendant was aware of the purported ADA violation and refused to correct it.  In short, it is unclear

11 from the allegations what Plaintiff's actual knowledge is.  Furthermore, under the deterrence test,

12 "an ADA plaintiff must [still] show an intent to return."  Johnson v. Mantena LLC, No. 5:19-cv-

13 06468-EJD, 2020 WL 1531355, at *5 (N.D. Cal. Mar. 31, 2020).  For the reasons previously

14 discussed, Plaintiff fails to establish why she would prefer Defendant's hotel over others or any

15 concrete plan to patronize Defendant's hotel in the future.  Finally, as with Defendant's other points,

16 Plaintiff does not raise any substantive arguments in opposition to Defendant's motion.  Gordon,

17 2009 WL 322891, at *4 n.4; Ramirez, 941 F. Supp. 2d at 1210; Tatum, 2007 WL 419463, at *3;

18 Adams, 2020 WL 4196248, at *6; Certified Nutraceuticals, Inc., 2018 WL 1245261, at *2. For all

19 of these reasons, Plaintiff fails to establish deterrence.

20      For the foregoing reasons, the Court finds Plaintiff fails to allege sufficient facts to establish

21 an intent to return and therefore standing for her ADA claim.

22      3.      California's Unruh Civil Rights Act (Cal. Civ. Code §§ 51, et seq.)

23      Having recommended that Plaintiff's ADA claim, which is Plaintiff's sole federal law

24 claim, be dismissed for lack of standing, the only remaining claim is Plaintiff's Unruh Act claim.

25 As a state law claim, that claim is before the Court pursuant to the Court's supplemental

26 jurisdiction. See 28 U.S.C. § 1367(a); Exxon Mobil Corp. v. Allapattah Servs., Inc., 545 U.S. 546,

27 558 (2005) ("Section 1367(a) is a broad grant of supplemental jurisdiction over other claims within

28 the same case or controversy, as long as the action is one in which the district courts would have

1    original jurisdiction.").   The Court typically has discretion to refuse to exercise supplemental

2    jurisdiction over state claims when all federal claims have been dismissed.   See 28 U.S.C. §

3    1367(c)(3).   Indeed, the Ninth Circuit has stated that "state law claims 'should' be dismissed if

4    federal claims are dismissed before trial."   Acri v. Varian Assocs., Inc., 114 F.3d 999, 1000 (9th

5    Cir.), supplemented, 121 F.3d 714 (9th Cir. 1997), as amended (Oct. 1, 1997) (quoting United Mine

6    Workers of Am. v. Gibbs, 383 U.S. 715, 726 (1966)) (emphasis omitted).   However, where, as here,

7    a district court "dismisses for lack of subject matter jurisdiction, it has no discretion and must

8    dismiss all claims."   Herman Family Revocable Trust v. Teddy Bear, 254 F.3d 802, 806 (9th Cir.

9    2001).   In light of this controlling authority, the undersigned recommends dismissal of Plaintiff's

10   remaining state law claim without prejudice.

11          Regardless, even to the extent the Court has discretion to retain supplemental jurisdiction

12   over Plaintiff's Unruh Act claim, the undersigned recommends declining to do so.   Here, the Court

13   finds that exercising supplemental jurisdiction over Plaintiff's Unruh Act claim in this case "would

14   not further the interest of judicial economy, convenience, fairness and comity."   See Johnson v.

15   Techbusiness Res. (Techbusiness), LLC, No. 20-cv-06048-BLF, 2020 WL 7013596, at *3 (N.D.

16   Cal. Nov. 28, 2020) (citations omitted).   Furthermore, other district courts in this circuit have

17   declined to exercise supplemental jurisdiction over Unruh Act claims after dismissing the parallel

18   ADA claim.   See, e.g., Langer v. HV Global Group, Inc., No. 2:21-cv-00328-JAM-KJN, 2021 WL

19   4777092, at *3 (E.D. Cal. Oct. 13, 2021); Techbusiness, 2020 WL 7013596, at *3 (collecting

20   Northern District cases); Garcia v. Thunderbird Lodge, Sacramento, LLC, No. 2:20-cv-02161-

21   MCE-CKD, 2021 WL 4443179, at *2 (E.D. Cal. Sept. 28, 2021); see also Brooke v. Suites LP, No.

22   3:20-cv-01217-H-AHG, 2020 WL 6149963, at *6 (S.D. Cal. Oct. 19, 2020) (finding plaintiff

23   sufficiently pled ADA claim but declining to exercise supplemental jurisdiction over Unruh Act

24   claim "because it substantially predominates over [the plaintiff's] federal claim under the ADA and

25   exceptional circumstances favor dismissal, including the Court's interests in comity and

26   discouraging forum-shopping.").   Accordingly, the undersigned similarly recommends the Court

27   decline to exercise supplemental jurisdiction and dismiss Plaintiff's state law Unruh Act claim

28   without prejudice.

Finally, even if the Court were to retain supplemental jurisdiction over Plaintiff's state law claim, dismissal is appropriate.  Plaintiff's Unruh Act claim is based on the same alleged ADA violations and therefore predicated upon the ADA claim.  See Whitaker, 985 F.3d at 1175 n.2 (because the Unruh Act "is coextensive with the ADA[,]" analysis of the sufficiency of the ADA claim "applies equally to [the plaintiff's] Unruh Act claim") (internal quotation marks omitted) (quoting Molski v. M.J. Cable, Inc. (M.J. Cable), 481 F.3d 724, 731 (9th Cir. 2007)); Cullen v. Netflix, Inc., 600 F. App'x 508, 509 (9th Cir. 2015) (where ADA claim was properly dismissed, "ADA-predicated . . . Unruh Civil Rights Act claim fail[s] as a matter of law").  In light of the Court's finding that Plaintiff has failed to sufficiently allege standing for her ADA claim, the Court concludes Plaintiff's Unruh Act claim must also be dismissed because it is dependent on Plaintiff's ADA claim.  Whitaker, 985 F.3d at 1175 n.2; M.J. Cable, 481 F.3d at 731; see also Langer v. Carvana, LLC, No. 8:21-cv-00303-JLS-JDE, 2021 WL 4439096, at *4 (C.D. Cal. Aug. 24, 2021) (finding "Unruh Act claim necessarily fails" where plaintiff lacked standing to assert his ADA claim).

**V.**

**CONCLUSION AND RECOMMENDATION**

Based on the foregoing, IT IS HEREBY RECOMMENDED THAT:

1.      Defendant's motion to set aside entry of default (ECF No. 16) be GRANTED;

2.      Plaintiff's motion for default judgment (ECF No. 7) be DENIED AS MOOT; and

3.      Defendant's motion to dismiss (ECF No. 16) be GRANTED, as follows: Plaintiff's ADA claim be dismissed with leave to amend, for lack of jurisdiction, and the Court decline to assert supplemental jurisdiction over Plaintiff's Unruh Act claim and therefore dismiss it without prejudice.

These findings and recommendations are submitted to the district judge assigned to this action, pursuant to 28 U.S.C. § 636(b)(1)(B) and this Court's Local Rule 304.  Within **fourteen (14) days** of service of this recommendation, any party may file written objections to these findings and recommendations with the Court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  The district judge

1  will review the magistrate judge's findings and recommendations pursuant to 28 U.S.C. §

2  636(b)(1)(C).  The parties are advised that failure to file objections within the specified time may

3  result in the waiver of rights on appeal.  Wilkerson v. Wheeler, 772 F.3d 834, 839 (9th Cir. 2014)

4  (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:   **October 14, 2021**

UNITED STATES MAGISTRATE JUDGE